# Exhibit 1

## *State Court Documents*

**SOUTH CAROLINA JUDICIAL BRANCH**

STATE OF SOUTH CAROLINA
COUNTY OF *Richland*

*Charles Prescott*

Plaintiff(s)

v.

*Geico, Absopf+ Towing;*

Defendant(s) *M. Thell Ryan arest Richards, John Doe*

Submitted By: *Mickael*

Address: _____

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

**2026CP400** 2514

Case No. _____

SC Bar Number: *843507954*
Telephone #: _____
Fax #: _____
Other: _____
Email: *Charles@columbia tax lawyer. Com*

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**DOCKETING INFORMATION (*Check all that apply*)**

***If Action is Judgment/Settlement do not complete***

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☑ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: *4/16/26*

SCCA 234 (Revised 11/2024)

2026 APR 16 AM 10: 20
JEANETTE W. McBRIDE
C.C.P. G.S. & F.C.
RICHLAND COUNTY FILED



**SOUTH CAROLINA JUDICIAL BRANCH**

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☒Breach of Contract (140)
☒Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #

_____

☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☐Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for<br>Absolute Towing, INC.,<br>Defendants. | **2026CP400 2514**<br><br>**SUMMONS**<br><br><br>**JURY TRIAL DEMANDED**<br><br>C/A No.: 2026-CP-40-_____ |

**TO THE DEFENDANT: GEICO GENERAL INSURANCE COMPANY**

Served through: Director of Insurance, South Carolina Department of Insurance, Capitol Center, 1201 Main Street, Suite 1000, Columbia, SC 29201

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

---

**NOTICE**

Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP.

---

**Charles Prescott**
Pro Se
150 Southwell Rd.        Email:        charles@columbiataxlawyer.com
Columbia, SC 29210       Telephone:    843-504-4542
Dated: April _____, 2026

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>**GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for Absolute Towing, INC.,<br>Defendants.** | **2026CP4002514**<br><br>**SUMMONS**<br><br><br>**JURY TRIAL DEMANDED**<br><br>C/A No.: 2026-CP-40-_____ |

**TO THE DEFENDANT: MITCHELL INTERNATIONAL, INC.**

Served through: C T Corporation System, Registered Agent, 2 Office Park Court, Suite 103, Columbia, SC 29223

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

---

**NOTICE**

Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP.

---

**Charles Prescott**
Pro Se
150 Southwell Rd.
Columbia, SC 29210
Dated: April _____, 2026

Email:        charles@columbiataxlawyer.com
Telephone:   843-504-4542

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for Absolute Towing, INC.,<br>Defendants. | **2026CP4002514**<br><br>**SUMMONS**<br><br>**JURY TRIAL DEMANDED**<br><br>C/A No.: 2026-CP-40-_____ |

**TO THE DEFENDANT: ABSOLUTE TOWING, INC.**

Served through: Kent L. Clay, Registered Agent, 1000 A Buff St, West Columbia, SC 29169

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

| NOTICE |
|---|
| Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP. |

**Charles Prescott**
Pro Se
150 Southwell Rd.
Columbia, SC 29210      Email:        charles@columbiataxlawyer.com
                        Telephone:    843-504-4542
Dated: April _____, 2026
Columbia, South Carolina

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for Absolute Towing, INC.,<br>Defendants. | **2026CP4002514**<br><br>**SUMMONS**<br><br>**JURY TRIAL DEMANDED**<br><br>C/A No.: 2026-CP-40-_____ |

## TO THE DEFENDANT: MIKAEL LEWIS RICHARDS

16 Templand Ct, Elgin, SC 29045

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

| **NOTICE** |
|---|
| Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP. |

**Charles Prescott**
Pro Se
150 Southwell Rd.
Columbia, SC 29210
Dated: April _____, 2026

Email:        charles@columbiataxlawyer.com
Telephone:   843-504-4542

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for Absolute Towing, INC.,<br>Defendants. | 2026CP4002514<br>SUMMONS<br><br>JURY TRIAL DEMANDED<br><br>C/A No.: 2026-CP-40-_____ |

## TO THE DEFENDANT: DAVID RYAN WEST

6710 Poley Creek Dr W, Lakeland, FL 33811

*(Service pursuant to SC Long-Arm Statute, SC Code § 36-2-803)*

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

| NOTICE |
|---|
| Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP. |

**Charles Prescott**
Pro Se
150 Southwell Rd.       Email:         charles@columbiataxlawyer.com
Columbia, SC 29210       Telephone:   843-504-4542
Dated: April _____, 2026

| STATE OF SOUTH CAROLINA<br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT |
|---|---|
| Charles Prescott, Jr.,<br>Plaintiff,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY;<br>ABSOLUTE TOWING, INC.;<br>CCC INFORMATION SYSTEMS, INC.;<br>MITCHELL INTERNATIONAL, INC.;<br>RYAN WEST, Individually;<br>MIKAEL RICHARDS, Individually;<br>and JOHN DOE, as Agent/Driver for Absolute Towing, INC.,<br>Defendants. | **2026CP40025|4**<br><br>**SUMMONS**<br><br>**JURY TRIAL DEMANDED**<br><br>C/A No.: 2026-CP-40-_____ |

**TO THE DEFENDANT: CCC INFORMATION SERVICES INC.**

Served through: Corporation Service Company, Registered Agent, 1703 Laurel Street, Columbia, SC 29201

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at the address shown below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

| **NOTICE** |
|---|
| Plaintiff reserves the right to demand a trial by jury pursuant to Rule 38, SCRCP. |

**Charles Prescott**
Pro Se
150 Southwell Rd
Columbia, SC 29210
Dated: April _____, 2026

Email:          charles@columbiataxlawyer.com
Telephone:   843-504-4542

**2026CP4002514**

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

Charles Prescott, Jr.
,Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY;
ABSOLUTE TOWING, INC.;
CCC INFORMATION SERVICES, INC.;
MITCHELL INTERNATIONAL, INC.;
RYAN WEST, Individually;
MIKAEL RICHARDS, Individually;
and JOHN DOE, as Agent/Driver for
Absolute Towing, Inc.,Defendants.

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

C/A No.: 2026-CP-____-_____

Plaintiff Charles Prescott, Jr., complaining of the above-named Defendants, would respectfully show unto this Honorable Court as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Charles Prescott, Jr. ("Prescott" or "Plaintiff") is a citizen and resident of the County of Lexington, State of South Carolina.

2. Defendant GEICO General Insurance Company ("GEICO") is a foreign insurance corporation organized and existing under the laws of the State of Nebraska.

3. Defendant GEICO maintains a principal place of business in in Chevy Chase, Maryland.

4. GEICO is authorized to transact the business of insurance in South Carolina.

5. GEICO regularly conducts business in Richland County.

6. Defendant Ryan West ("West") is an individual.

7. Defendant Ryan West ("West") is a Senior Director employed by GEICO.

8. Defendant Ryan West ("West"), upon information and belief, conducted business and engaged in the acts and omissions described herein within the State of South Carolina.

9. Defendant Mikael Richards ("Richards") is an individual.

10. Defendant Mikael Richards ("Richards") is, upon information and belief, a licensed insurance adjuster employed by or acting as an agent of GEICO.

Page **1** of 27

11. Defendant Mikael Richards ("Richards") conducted business and engaged in the acts and omissions described herein within the State of South Carolina.

12. Defendant **CCC INFORMATION SERVICES, INC.** ("CCC") is a Delaware corporation with its principal place of business in Chicago, Illinois.

13. CCC develops, licenses, and maintains proprietary automotive claims valuation software—including the CCC ONE platform—that is integrated into GEICO's claims adjustment workflow in South Carolina.

14. Defendant Mitchell International, Inc. ("Mitchell") is a Delaware corporation with its principal place of business in San Diego, California.

15. Mitchell develops, licenses, and maintains proprietary automotive repair estimating and valuation software used by GEICO in the processing and adjustment of claims in South Carolina.

16. Defendant Absolute Towing, Inc. ("Absolute") is a South Carolina Company with its principal place of business in West Columbia, Lexington County, South Carolina.

17. Absolute is engaged in the business of automotive recovery and towing and is regulated as a motor carrier by the South Carolina Office of Regulatory Staff ("ORS").

18. Defendant John Doe ("Doe") is, upon information and belief, an individual residing in South Carolina, employed by or acting as an agent of Absolute, and was the operator of the recovery vehicle at all times material to this action.

19. Plaintiff will seek leave to amend to identify Doe by his true name upon discovery.

20. At all times relevant to this action, Absolute acted as the authorized agent, servant, and/or contractor of GEICO.

21. Absolute acted within the course and scope of that agency relationship during the events described herein, and GEICO exercised or had the right to exercise control over the means and manner of the recovery operation.

22. Under the doctrine of respondeat superior and the non-delegable duty doctrine, GEICO is vicariously, jointly, and severally liable for the acts and omissions of Absolute and Doe. See Fernander v. Thigpen, 278 S.C. 140 (1982).

23. The acts and omissions giving rise to this action occurred in Richland County, South Carolina, including at the location of the vehicle recovery on Candi Lane.

24. This Court has subject matter jurisdiction over the state-law claims pursuant to S.C. Const. art. V, § 11, and S.C. Code Ann. § 14-5-340.

25. This Court has concurrent jurisdiction over the federal RICO claim pursuant to Tafflin v. Levitt, 493 U.S. 455 (1990).

26. Venue is proper in Richland County pursuant to S.C. Code Ann. § 15-7-30, as the acts and omissions giving rise to this action occurred in Richland County.

## FACTUAL ALLEGATIONS

27. Plaintiff was the titled owner of a 2008 Mercedes-Benz SLK 280 bearing VIN WDBWK54FX8F182975 (the "Vehicle").

28. The Vehicle was not a stock production automobile.

29. Over the period of ownership, Plaintiff commissioned and personally performed extensive customization, transforming the Vehicle into a bespoke, Pagoda/300 SL-inspired performance build.

30. The modifications included, without limitation: a Bilstein B8 performance suspension system with H&R lowering springs; Brembo brake rotors and Friction Pads; a custom-welded and hand-laid six-inch extended fiberglass hood; a hand-sculpted, precisely mated fiberglass front fascia and bumper; integrated audio/visual components; and custom wheel and tire configurations.

31. The custom suspension and related performance components installed on the Vehicle have a documented specialized value exceeding $4,000.76.

32. The Vehicle's modified configuration resulted in a static front-end ground clearance of approximately five inches—well below the clearance of a standard production vehicle—thereby necessitating specific, low-clearance recovery protocols for safe transport.

33. The custom hood extension and hand-sculpted front fascia represent 163 hours of specialized professional labor at a market rate of $135.00 per hour, totaling $22,005.00 in documented labor value.

34. These components are not interchangeable with any stock or aftermarket part; they were designed, fabricated, and fitted as an integrated system.

35. The base Actual Cash Value ("ACV") of the Vehicle, representing its fair market value in its pre-loss condition exclusive of custom enhancements, was $8,510.00.

36. This figure does not include the value of the specialized custom components, the professional labor required for their fabrication and installation, or the diminished value attributable to the loss event.

37. Plaintiff was the named insured under GEICO Automobile Policy No. 6200-06-26-25 (the "Policy"), which provided, among other coverages, emergency road service and physical damage coverage for direct and accidental loss.

38. On February 28, 2026, Plaintiff's Vehicle experienced a flat tire and Plaintiff requested emergency road service under the Policy.

39. GEICO dispatched Absolute to perform the recovery operation as its authorized representative, pursuant to GEICO's proprietary vendor dispatch network.

40. Upon arrival, Absolute's agent, Defendant Doe, had actual visual notice of the Vehicle's modified, lowered stance and the custom fabricated components comprising the front end.

41. Despite this actual notice, Doe proceeded with a standard flatbed recovery using equipment and techniques wholly unfit for a low-clearance, custom-built performance vehicle.

42. Absolute's personnel initially attempted to drag the Vehicle onto the flatbed by engaging the suspension components as a load point—a technique that would foreseeably damage the suspension geometry and fiberglass bodywork of any modified low-clearance vehicle.

43. This improper dragging directly caused the front fascia to crack and delaminate in multiple locations.

44. Rather than halting operations and obtaining appropriate equipment, Absolute's personnel then allowed the Vehicle to roll unsecured down the flatbed ramp.

45. At this point Defendant DOE photographed the damage to the vehicle on his cell phone.

46. Plaintiff provided the Vehicle keys to Absolute's personnel specifically to enable placing the Vehicle in neutral for a controlled, rolling load onto the flatbed—a standard and safe technique for low-clearance vehicles. Instead, Absolute's personnel started the engine and powered the Vehicle up the ramp under its own power.

47. In a further deviation from any accepted towing standard, Absolute's personnel attempted to use unfastened two-by-four wooden planks as improvised ramp extensions.

48. The force of the Vehicle's powered ascent ejected these planks as high-velocity projectiles from the rear of the flatbed.

49. Absolute's personnel failed entirely to utilize the factory-mandated tow hook until they were asked why they weren't using it—the designated load point engineered and specified by Mercedes-Benz for precisely this type of recovery—despite its visibility and accessibility.

50. Upon using the factory tow hook the vehicle was loaded without further damage.

51. Absolute's cumulative failures resulted in structural cracking, active fiberglass delamination, and permanent deformation of the custom front fascia and extended hood assembly.

52. During the recovery operation, Absolute's personnel discussed the incident inside the cab of the tow truck, and the tow vehicle's interior camera system recorded portions of that interaction while the Vehicle remained in Absolute's custody.

53. The custom hood features a six-inch forward extension that requires a precisely mated, hand-sculpted fiberglass bumper for proper fitment, structural integrity, and safety latch engagement.

54. Damage to either component destroys the integrity of the matched assembly. No stock or mass-produced aftermarket part can substitute for or replicate this bespoke configuration.

55. Plaintiff notified GEICO of the loss and the nature of the Vehicle's custom build on the same day as the incident, February 28, 2026.

56. Defendant Richards, acting as GEICO's assigned adjuster, generated a "Preliminary Estimate" bearing Workfile ID 105995ea, dated on or about March 6, 2026.

57. The Estimate's internal documentation expressly characterized the damaged components as "MODIFIED."

58. Despite this internal acknowledgment, Richards simultaneously proposed the use of generic, non-OEM "economy" and "knockoff" aftermarket replacement parts—parts that, by their standardized dimensions and configuration, are physically and structurally incompatible with the Vehicle's custom-engineered assembly.

59. Specifically, the installation of any standard-dimension bumper or front fascia on a Vehicle with a six-inch extended hood would prevent the hood from closing and latching properly, rendering the Vehicle non-compliant with Federal Motor Vehicle Safety Standard 113 ("FMVSS 113") (Hood Latch Systems) and therefore illegal to operate on public roads.

60. GEICO's proposed repair is not merely inadequate—it is a physical and regulatory impossibility.

61. Richards further utilized the CCC ONE and/or Mitchell valuation platform to generate an Actual Cash Value report that intentionally or systematically excluded the Vehicle's documented custom enhancements—including the Bilstein B8 suspension, H&R lowering springs, and custom fabricated bodywork—from the ACV calculation, artificially deflating the claim value.

62. GEICO withheld the complete ACV valuation report and refused to provide underlying CCC ONE or Mitchell data to Plaintiff despite multiple requests, preventing meaningful review of the methodology applied to the claim.

63. GEICO intentionally mischaracterized the communications record between Plaintiff and GEICO in a subsequent regulatory submission, manufacturing a purported "waiver" of Plaintiff's rights that has no factual basis in the parties' actual exchanges.

64. GEICO's conduct has failed to satisfy the "Made Whole" doctrine established under Sloan v. Hicks, and its proposal has never placed Plaintiff in the position he occupied prior to the loss.

65. On March 26, 2026, Defendant West, acting in his capacity as GEICO Senior Director, transmitted an electronic communication to the South Carolina Department of Insurance ("SCDOI") in connection with regulatory inquiry File No. 268531.

66. In that transmission, West falsely represented to the SCDOI that Plaintiff had "confirmed that no customized parts were damaged" and had agreed that a reinspection of the Vehicle was not warranted.

67. Pursuant to SECTION 38-47-50 as a matter of law Adjusters are declared to be acting as the agents for the company or companies represented by them in the adjustment of any loss.

68. These representations are materially false.

69. Plaintiff made no such confirmation and agreed to no such waiver.

70. Moreover, the statements are directly contradicted by GEICO's own internal records—specifically, Richards's Preliminary Estimate, which GEICO generated, which expressly labels the damaged components as "MODIFIED."

71. West transmitted this false statement to a state regulatory body with the specific purpose of causing the SCDOI to close its inquiry and to insulate GEICO from regulatory consequences arising from its bad faith adjustment of Plaintiff's claim.

72. The transmission of a materially false statement to a state regulatory authority via interstate electronic communication constitutes, inter alia, wire fraud under 18 U.S.C. § 1343 and a predicate act for RICO liability.

73. As a motor carrier regulated by the ORS pursuant to S.C. Code Ann. § 58-23-1120, Absolute is required to maintain valid liability and "on-hook" cargo insurance (Form E) as a condition of its operating authority, and to conduct its operations with transparency regarding its financial responsibility to the public.

74. On April 10, 2026, Plaintiff contacted Absolute by telephone at (803) 939-9393 to request the identity of Absolute's liability and on-hook cargo carrier, for purposes of pursuing a direct claim for damage caused by Absolute's negligent towing operation.

75. Absolute's agents expressly refused to provide the carrier's name or policy number. When Plaintiff invoked Absolute's mandatory duty of disclosure under applicable law, Absolute's agent abruptly terminated the call.

76. On April 12, 2026, Plaintiff again contacted Absolute by telephone at (803) 939-9393 to request the identity of Absolute's liability and on-hook cargo carrier, and Absolutes employees once again refused to identify their carrier.

77. This willful refusal to disclose legally mandated insurance information was, upon information and belief, calculated to shield Absolute's insurer from the claim, obstruct Plaintiff's ability to seek timely compensation, and preserve the ongoing undervaluation of the loss.

78. On or about April 13, 2026, Defendant GEICO, through its Auto Damage Supervisor Britt Smith, issued formal written responses to Plaintiff's settlement proposals dated March 24, 2026, and March 26, 2026.

79. In these responses, GEICO formally stated it "remains unable to meet or accept the settlement agreement" proposed by Plaintiff, effectively maintaining its refusal to indemnify Plaintiff for the actual cash value of the "MODIFIED" specialized components of the Vehicle.

80. Despite being placed on formal notice of the fraudulent nature of the March 20, 2026 correspondence (which manufactured a "waiver of rights" to the SCDOI), GEICO explicitly ratified said misconduct on April 13, 2026, stating: "It is our position that our previous communications did not mischaracterize discussions or attempt to require a waiver of rights."

81. GEICO further admitted that its valuation and claim handling were based solely on the "inspection conducted," willfully ignoring the specialized "MODIFIED" status documented in its own internal estimates and the physical impossibility of a "software-only" repair for a physical component failure.

82. GEICO concluded its April 13, 2026 correspondence by stating that "[b]ased on the information currently available, we consider the handling of this claim to be appropriate,"

thereby establishing a deliberate and conscious intent to persist in the bad faith handling of Plaintiff's claim despite clear evidence of error and misrepresentation.

83. As a direct and proximate result of the acts and omissions of all Defendants, Plaintiff has suffered the following documented damages:

a) Base ACV of the Vehicle: $8,510.00;

b) Custom enhancements and modifications: $4,000.76;

c) Specialized professional labor (163 hours × $135.00/hr): $22,005.00;

d) Loss of use at $250.00 per day from February 28, 2026 through the date of final judgment;

e) Expert witness and appraisal costs: $2,500.00;

f) Stigma damages including permanent diminution in market value; and

g) Such other damages as may be established at trial.

## CAUSES OF ACTION

### COUNT I NEGLIGENCE AND GROSS NEGLIGENCE

**(Against Defendants GEICO, Absolute, and John Doe)**

84. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85. Defendants GEICO, Absolute, and Doe each owed Plaintiff a duty of reasonable care in the performance of the recovery services dispatched under the Policy.

86. That duty encompassed the obligation to perform the recovery in a workmanlike manner, consistent with industry standards for high-performance, low-clearance vehicles, and without causing unnecessary damage to the property entrusted to their care.

87. Absolute and Doe breached this duty through, without limitation:

88. proceeding with a standard flatbed recovery despite actual visual notice of the Vehicle's lowered stance and custom components;

89. using the suspension components as a tow point rather than the factory-mandated tow hook;

90. powering the Vehicle under its own engine up the ramp rather than rolling it in neutral;

91. using unfastened wooden planks as improvised ramp extensions; and

92. allowing the Vehicle to roll unsecured.

93. GEICO breached its duty by dispatching and directing a recovery vendor that lacked the specialized equipment and training required for a low-clearance, custom-built performance vehicle, and by failing to establish or enforce protocols that would prevent the damage described herein.

94. Pursuant to the doctrine of respondeat superior, GEICO is vicariously, jointly, and severally liable for the negligent acts and omissions of Absolute and Doe.

95. The conduct of Absolute and Doe—proceeding in willful disregard of visible, obvious risk with makeshift equipment—constitutes gross negligence and wanton and reckless conduct entitling Plaintiff to punitive damages.

96. These breaches directly and proximately caused the destruction of the custom fabricated components and the loss of the specialized labor permanently invested in the Vehicle.

## COUNT II BREACH OF CONTRACT

### (Against Defendant GEICO)

97. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98. The Policy constitutes a valid and binding contract between Plaintiff and GEICO, obligating GEICO to provide coverage for direct and accidental loss and to pay the amounts necessary to repair or replace damaged property with parts of like kind and quality, sufficient to restore the Vehicle to its pre-loss condition.

99. GEICO breached the Policy by proposing repair using standardized, mass-produced aftermarket components that are physically and structurally incompatible with the Vehicle's custom-engineered configuration and that cannot restore the Vehicle to its pre-loss condition.

100.     A standard bumper fascia cannot mate with a six-inch extended custom hood; the proposed repair is a physical impossibility. See Fuller v. Eastern Fire & Cas. Ins. Co., 284 S.C. 47 (Ct. App. 1984).

101.     GEICO's own preliminary estimate acknowledged the damaged components as "MODIFIED," yet GEICO proceeded without deviation on a repair methodology that ignores that characterization entirely.

102.     GEICO further breached the Policy by utilizing automated valuation platforms that systematically excluded known custom enhancements from the ACV calculation, resulting in an indemnity offer that does not reflect the actual pre-loss value of the Vehicle.

103.     As a direct and proximate result of GEICO's breach, Plaintiff has suffered damages including, without limitation, the diminution in value of the Vehicle, the uncompensated loss of custom components, the uncompensated loss of specialized labor, and the continuing inability to restore the Vehicle to its pre-loss condition.

## COUNT III BAD FAITH / BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant GEICO)

104.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

105.     Under South Carolina law, every insurance contract contains an implied covenant of good faith and fair dealing, and an insurer's unreasonable refusal to pay or delay in payment of legitimate claims gives rise to a tort cause of action for bad faith. Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 398 (1996); Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336 (1983).

106.     GEICO breached this duty by engaging in a continuous course of obstructive and deceptive claims handling conduct, including:

107.     proposing a repair that is a physical and regulatory impossibility;

108.     utilizing automated valuation algorithms that exclude documented custom enhancements without individualized review;

109. withholding the ACV report and underlying valuation data despite multiple requests;

110. mischaracterizing Plaintiff's communications to manufacture a false waiver;

111. transmitting materially false statements to the SCDOI; and

112. failing to conduct any individualized assessment of a claim that its own adjuster had flagged as involving a "MODIFIED" vehicle.

113. GEICO's conduct was not the product of a bona fide coverage dispute.

114. GEICO's own internal records—including the "MODIFIED" designation in the preliminary estimate—confirm that GEICO had actual knowledge of facts that required individualized evaluation and a different adjustment methodology.

115. GEICO's decision to disregard those facts in favor of a template-based process was a deliberate choice.

116. GEICO's standardized adjustment practices, as applied to modified and custom vehicles, represent a business practice capable of repetition across similarly situated policyholders in South Carolina, multiplying the harm to the insuring public.

117. As a result of GEICO's bad faith conduct, Plaintiff has suffered consequential damages beyond policy benefits, including loss of use, diminution in value, loss of custom components, expert costs, and the costs of pursuing this litigation.

118. Defendant GEICO's statement on April 13, 2026, that it considers its handling "appropriate" constitutes a continuing act of bad faith, as GEICO is in possession of documentation proving the Vehicle is "MODIFIED" and that the CCC ONE/Mitchell valuation used to settle the claim is factually and technically insufficient.

119. GEICO's refusal to move from its position after a "review of the concerns and requests" outlined by Plaintiff demonstrates that its failure to pay the full benefits of the policy is not the result of a clerical error, but a deliberate corporate strategy to underpay specialized claims.

120. Plaintiff further seeks punitive damages as set forth herein.

**COUNT IV VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT S.C. Code Ann. § 39-5-20**

**(Against Defendants GEICO and Absolute)**

121.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

122.    GEICO's conduct in the adjustment of this claim constitutes an unfair and deceptive act and practice in the conduct of trade or commerce within the meaning of S.C. Code Ann. § 39-5-20.

123.    Specifically, GEICO's use of automated, template-based valuation and repair protocols, applied without individualized assessment to a vehicle its own adjuster classified as "MODIFIED," constitutes a systematic practice with the capacity to deceive policyholders and deprive them of the full benefit of their contracts.

124.    GEICO's transmission of a materially false statement to the SCDOI asserting that Plaintiff confirmed no custom parts were damaged which further constitutes a separate deceptive act with adverse impact on regulatory oversight and on the public interest.

125.    GEICO's standardized adjustment practices are applied, upon information and belief, to a broad class of South Carolina policyholders whose vehicles contain aftermarket or custom components, creating a clear potential for repetition and public harm sufficient to satisfy the public interest element of a SCUTPA claim. Noack Enterprises, Inc. v. Country Corner Interiors, Inc., 290 S.C. 475 (Ct. App. 1986).

126.    Absolute's willful refusal on April 10, 2026 to disclose the identity of its liability and on-hook cargo carrier, information Absolute is legally required to maintain and make available as a regulated motor carrier, constitutes a separate unfair and deceptive act within the meaning of § 39-5-20.

127.    This conduct has a clear potential for repetition, as Absolute is a high-volume towing vendor that routinely interacts with South Carolina consumers in distressed recovery situations where informational asymmetry is acute.

128.    Absolute's willful second refusal on April 12, 2026 to disclose the identity of its liability and on-hook cargo carrier constitutes an additional deceptive act within the meaning of § 39-5-20. This conduct has a clear potential for repetition, as Absolute is a

Page **13** of **27**

high-volume towing vendor that routinely interacts with South Carolina consumers in distressed recovery situations where informational asymmetry is acute.

129. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff has suffered ascertainable losses including the uncompensated loss of custom components, specialized labor value, loss of use, and costs incurred in attempting to resolve this matter and pursue this litigation.

130. Plaintiff seeks treble damages, attorney's fees, and costs pursuant to S.C. Code Ann. § 39-5-140.

### COUNT V FRAUDULENT MISREPRESENTATION

### (Against Defendants GEICO, West, and Richards)

131. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

132. West knowingly and intentionally transmitted a materially false statement to the SCDOI on March 26, 2026, representing that Plaintiff had confirmed no custom parts were damaged and had agreed a reinspection was not warranted.

133. West made this representation with knowledge of its falsity, intending that the SCDOI and Plaintiff would rely upon it to their detriment.

134. Prior to Defendants' false representations, Plaintiff personally met with Defendant Richards at Plaintiff's residence for an in person inspection of the Vehicle, which occurred in Plaintiff's driveway.

135. During that inspection, Defendant Richards had direct, unobstructed physical access to the Vehicle and personally observed its nonstock configuration, including the six inch extended custom hood, hand sculpted fiberglass front fascia, lowered suspension geometry, and other visibly modified components.

136. Plaintiff specifically pointed out the custom fabricated nature of the frontend assembly and the incompatibility of any standard replacement components, and

Defendant Richards acknowledged the Vehicle's modified condition at the time of inspection.

137.    Accordingly, Defendants' subsequent representations—both to Plaintiff and to the South Carolina Department of Insurance—that no customized parts were damaged were not the product of mistake, misunderstanding, or incomplete information, but were knowingly false statements made after direct, personal inspection of the damaged components.

138.    Richards knowingly generated an Estimate of Record that internally characterized the damaged components as "MODIFIED" while simultaneously proposing incompatible standard replacement parts and excluding the custom components from ACV valuation.

139.    These representations were designed to induce Plaintiff to accept an inadequate settlement and to mislead regulatory authorities regarding the true scope of the loss.

140.    GEICO ratified and incorporated these misrepresentations into its formal position letter of March 20, 2026, and into its regulatory submission, thereby adopting them as its own.

141.    Plaintiff and the SCDOI relied upon these representations to their detriment: Plaintiff was denied a proper adjustment, and the regulatory inquiry was caused to be closed on false pretenses.

142.    Defendant GEICO's April 13, 2026 letter serves as a ratification of the fraud perpetrated against the South Carolina Department of Insurance.

143.    By asserting that the March 20th and March 24th letters "did not mischaracterize discussions," GEICO has confirmed its intent to rely upon a fabricated narrative regarding a "waiver of rights" to avoid regulatory scrutiny and to prejudice the Plaintiff's legal standing.

144.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered damages as set forth herein and is entitled to compensatory and punitive damages.

## COUNT VI BREACH OF BAILMENT

**(Against Defendants GEICO and Absolute)**

145. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

146. GEICO arranged, authorized, and directed the recovery operation through its proprietary vendor dispatch system, exercising control over the selection of the recovery agent and the scope of the recovery services to be provided.

147. GEICO held constructive possession of the Vehicle from the moment of dispatch.

148. When Absolute took physical possession of the Vehicle as GEICO's authorized agent, a bailment for mutual benefit was created among Plaintiff, GEICO, and Absolute. Moore v. City of Columbia, 284 S.C. 518 (Ct. App. 1985).

149. As bailees in possession and control of the Vehicle, Defendants owed Plaintiff a duty to exercise reasonable care to protect the Vehicle and to return it in the same condition as received. Fortner v. Carnes, 258 S.C. 455 (1972).

150. Defendants breached this duty: the Vehicle was delivered to Absolute in good condition; it was returned in a materially damaged state, with structural delamination and physical deformation caused by the mishandling described herein; and this damage occurred while the Vehicle was in Defendants' exclusive custody and control. A rebuttable presumption of negligence therefore arises against Defendants. Clatworthy v. S.C. Elec. & Gas Co., 275 S.C. 154 (1980).

151. Absolute's subsequent obstruction of the insurance disclosure inquiry on April 10, 2026 constitutes a further breach of the implied covenant of good faith and fair dealing inherent in the bailment relationship.

## COUNT VII TRESPASS TO CHATTELS

### (Against Defendants GEICO, Absolute, and John Doe)

152. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

153. Defendants intentionally exercised dominion and control over Plaintiff's Vehicle—a tangible chattel—during the recovery operation and subsequent claims handling process.

154. Defendants' intentional application of mechanical force through improper recovery techniques, applied with knowledge of the Vehicle's custom configuration, constituted an unauthorized intermeddling with Plaintiff's property beyond the scope of any lawful justification.

155. As a direct result of this intermeddling, the Vehicle was materially impaired in its condition, structural integrity, and functionality, including damage to the custom fabricated bodywork and suspension geometry.

156. Plaintiff has suffered actual damages as a result of Defendants' trespass, including diminution in value, loss of use, costs of investigation, and other consequential damages.

## COUNT VIII LOSS OF USE

### (Against All Defendants)

157. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

158. As a direct and proximate result of Absolute's negligent towing operation and GEICO's subsequent bad faith refusal to properly adjust the claim, Plaintiff has been deprived of the use of the Vehicle continuously from February 28, 2026 through the present.

159. Under South Carolina law, Plaintiff is entitled to the reasonable value of the loss of use of personal property for the period during which he was deprived of its use, regardless of whether a substitute vehicle was actually rented. Gaskins v. Southern Farm Bureau Cas. Ins. Co., 354 S.C. 12 (2003).

160. Due to the specialized, custom nature of the Vehicle, no standard rental vehicle constitutes a functional equivalent. The daily rental value of a comparable high-performance, custom convertible is $250.00 per day.

161. Plaintiff seeks loss-of-use damages from February 28, 2026 through the date of final judgment, in an amount to be determined at trial.

## COUNT IX PUNITIVE DAMAGES

### (Against All Defendants)

162. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

163. The conduct of all Defendants, as set forth herein, was willful, wanton, and undertaken in reckless and conscious disregard of Plaintiff's rights and interests. Specifically:

164. GEICO knowingly proposed an impossible repair, withheld material valuation data, and transmitted false statements to a state regulatory body to obstruct review of its claims handling—all while its own adjuster had documented the affected components as "MODIFIED."

165. West and Richards acted with specific intent to deceive Plaintiff and regulatory authorities for the purpose of minimizing GEICO's indemnity obligation.

166. Absolute proceeded with a standard recovery using makeshift equipment in deliberate disregard of the visible, obvious risk to a clearly non-standard, custom-built vehicle.

167. CCC and Mitchell knowingly provided software infrastructure that enabled the systematic exclusion of documented custom components from valuation calculations.

168. Defendants' conduct was not isolated error; it reflects systematic practices capable of repetition against similarly situated policyholders and members of the South Carolina public.

169. Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants' conduct and deter its repetition, to be determined by the jury.

## COUNT X VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(c)

### (Against Defendant GEICO)

170. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

171. Defendant GEICO is a "person" within the meaning of 18 U.S.C. § 1961(3).

172.     GEICO, its regional adjustment centers, and third-party valuation software vendors CCC and Mitchell constitute an "association-in-fact enterprise" within the meaning of 18 U.S.C. § 1961(4), functioning as a continuing operational unit with shared personnel, shared protocols, and shared economic objectives.

173.     This Enterprise is engaged in, and its activities affect, interstate commerce. GEICO is a Nebraska corporation operating from Maryland that transmits claims data, estimates, regulatory correspondence, and valuation reports across state lines to policyholders and regulators in South Carolina. CCC and Mitchell transmit proprietary valuation algorithms and output via interstate electronic systems.

174.     GEICO conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of the following predicate acts of wire and mail fraud:

175.     Wire Fraud (18 U.S.C. § 1343): On March 6, 2026, the interstate transmission of the Richards Estimate of Record, which used automated systems to override and suppress documented modification data, converting a specialized loss into a commodity loss through electronic data manipulation, with the intent to defraud Plaintiff of the full value of his claim.

176.     Wire Fraud (18 U.S.C. § 1343): On March 26, 2026, the interstate electronic transmission by West to the SCDOI containing the knowingly false assertion that Plaintiff confirmed no customized parts were damaged, intended to obstruct regulatory oversight and to facilitate the continued unlawful withholding of insurance benefits.

177.     Wire Fraud (18 U.S.C. § 1343): On March 20, 2026, the mailing to Plaintiff's residence of GEICO's formal "final position" letter, which incorporated and ratified the prior fraudulent electronic representations into a hard-copy record, completing the scheme to defraud Plaintiff into accepting an inadequate settlement.

178.     The predicate acts described herein are related by common purpose, common participants, common methods, and common victims, and have continuity sufficient to constitute a pattern.

179.    These standardized adjustment and misrepresentation protocols are applied by GEICO across its South Carolina claims portfolio, creating open-ended continuity and ongoing threat of future predicate acts against similarly situated policyholders. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

180.    As a direct and proximate result of GEICO's violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property.

181.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to threefold the damages he has sustained, plus the costs of this suit and reasonable attorney's fees.

## COUNT XI CIVIL CONSPIRACY

### (Against All Defendants)

182.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

183.    Defendants combined, associated, and agreed—whether expressly or by the coordinated adoption of a common scheme—for the unlawful purpose of systematically devaluing Plaintiff's specialized insurance claim, suppressing regulatory oversight, and shielding GEICO from its contractual indemnity obligations.

184.    GEICO, together with its authorized emergency road service network (including Absolute) and third-party valuation software vendors CCC and Mitchell, operated as a continuing coordinated unit—sharing personnel, protocols, and economic objectives—for the common purpose of systematically devaluing and denying insurance claims, misrepresenting vehicle conditions and policyholder statements to regulatory authorities, and insulating GEICO from liability for the tortious acts of its authorized vendors. This coordinated unit conducted its affairs through a pattern of concerted wrongful acts, including but not limited to: (a) On or about March 6, 2026, the interstate transmission of the Richards Estimate of Record (Workfile ID: 105995ea), which internally documented the Vehicle as 'MODIFIED' while simultaneously deploying automated algorithms to propose incompatible replacement parts, with the intent to deceive Plaintiff as to the true scope and cost of restoration; (b) On March 26, 2026, West's interstate electronic transmission to the

SCDOI (File No. 268531) of a materially false representation that Plaintiff had confirmed no customized parts were damaged, with the specific intent to cause the SCDOI to close its inquiry and to obstruct regulatory oversight of GEICO's claims adjustment practices; and (c) Between March 6 and March 26, 2026, the interstate transmission of ACV reports generated by the CCC and Mitchell platforms that intentionally and systematically excluded documented custom components—including the Bilstein B8 suspension, H&R lowering springs, and custom fabricated bodywork—to artificially deflate the claim value below the Made Whole threshold established in Sloan v. Hicks.

185.    The Enterprise (GEICO, CCC, and Mitchell) agreed to and did deploy proprietary valuation algorithms that systematically excluded documented professional labor and high-value custom modifications from ACV calculations.

186.    Defendants West and Richards agreed to and did make false representations to state regulatory authorities to close legitimate inquiry.

187.    Absolute agreed to and did obstruct Plaintiff's access to its insurance information, preventing direct recovery and preserving the Enterprise's control over the claim.

188.    Each Defendant committed overt acts in furtherance of the conspiracy, as set forth with particularity throughout this Complaint.

189.    This combination resulted in special damages to Plaintiff—including the uncompensated loss of professional labor equity, diminution in market value, and the costs of this litigation—which would not have occurred absent the concerted actions of the conspirators.

### COUNT XII NEGLIGENT SELECTION, TRAINING, AND SUPERVISION

### (Against Defendants GEICO and Absolute)

190.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

191.    GEICO was negligent in its selection and retention of Absolute as an authorized emergency road service vendor. GEICO knew or should have known, through reasonable

vendor qualification procedures, that Absolute lacked the specialized equipment, trained personnel, and established protocols required for the safe recovery of lowered, high-performance custom vehicles.

192.     GEICO was further negligent in its failure to train and supervise West and Richards to conduct individualized assessments of claims involving modified vehicles, to apply appropriate valuation methodology, and to comply with their statutory obligations of truthful reporting to regulatory authorities.

193.     Absolute was negligent in its hiring and retention of Defendant Doe, whose performance during the recovery operation—including his use of unfastened wooden planks as makeshift ramp extensions, his disregard of the factory-mandated tow hook, and his decision to power the Vehicle up the ramp under engine power—demonstrated a level of incompetence that posed a foreseeable and unreasonable risk of harm to high-value property entrusted to Absolute's care.

194.     Absolute was further negligent in its failure to train Doe and other recovery personnel in the specific techniques required for low-clearance, custom-built, and performance vehicles, and in its failure to maintain and deploy equipment adequate for such recoveries.

195.     As a direct and proximate result of these failures of selection, training, and supervision, Plaintiff has suffered the damages described herein.

**COUNT XIII NEGLIGENCE PER SE / BREACH OF STATUTORY DUTY**

**(Against Defendants West and Richards)**

196.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

197.     Defendants West and Richards are licensed insurance adjusters in the State of South Carolina, subject to the licensing, conduct, and professional responsibility requirements of S.C. Code Ann. § 38-47-10 et seq.

198. S.C. Code Ann. § 38-47-60 establishes grounds for suspension and revocation of an adjuster's license, including misrepresentation, fraudulent or dishonest practices, and conduct demonstrating incompetence or untrustworthiness in the performance of duties. This statute establishes the minimum standard of professional conduct required of licensed adjusters operating in South Carolina.

199. S.C. Code Ann. § 38-59-20 prohibits unfair claims settlement practices by adjusters and insurers, including the misrepresentation of pertinent facts or policy provisions, failure to adopt and implement reasonable standards for prompt investigation of claims, and compelling insureds to institute litigation to recover amounts reasonably due under a policy.

200. S.C. Reg. 69-58 (Unfair Claims Settlement Practices) further defines the standard of care applicable to licensed adjusters, requiring fair and good faith investigation, accurate reporting, and the use of reasonable methodologies in the valuation of claims.

201. As the named insured whose first-party claim was specifically assigned to West and Richards for adjustment and supervision, Plaintiff is a member of the class of persons these statutes and regulations were enacted to protect. Under South Carolina law, the violation of a statute enacted for the protection of a particular class constitutes negligence per se as to members of that class. Whitlaw v. Kroger Co., 306 S.C. 52 (1991).

202. West violated these statutory standards by knowingly transmitting a materially false statement to the SCDOI on March 26, 2026—asserting that Plaintiff had confirmed no customized parts were damaged—a representation directly contradicted by GEICO's own internal Estimate of Record, and by West's own knowledge of the claim file. This conduct constitutes misrepresentation and dishonest practice within the meaning of § 38-47-60(A) and an unfair claims settlement practice within the meaning of § 38-59-20.

203. Richards violated these statutory standards by intentionally excluding documented vehicle modifications from the Estimate of Record, proposing repair methodology that violates FMVSS 113, misrepresenting the compatibility of proposed replacement parts, and applying a valuation methodology that he knew—based on his own "MODIFIED" notation— was inadequate to restore the Vehicle to its pre-loss condition.

204.     These statutory violations were willful, wanton, and committed with the specific intent to deprive Plaintiff of the full value of his claim and to obstruct legitimate regulatory oversight of GEICO's claims adjustment practices.

205.     As a direct and proximate result of West's and Richards' violations of their statutory duties, Plaintiff has suffered damages including the uncompensated loss of custom components, loss of specialized labor equity, diminution in vehicle value, regulatory harm, and costs incurred in pursuing this action.

## COUNT XIV VIOLATION OF STATUTORY DUTY TO DISCLOSE INSURANCE INFORMATION

### (Against Defendant Absolute Towing, LLC)

206.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

207.     By accepting the Vehicle for recovery and transport on February 28, 2026, Absolute entered into a contract of bailment and undertook a duty of extraordinary care to return the Vehicle in the same condition as received.

208.     As a motor carrier regulated by the ORS pursuant to S.C. Code Ann. § 58-23-1120, Absolute is required to maintain valid liability and "on-hook" cargo insurance (Form E) as a condition of its operating authority. As a regulated carrier and insured entity, Absolute has a mandatory duty of transparency regarding its financial responsibility to persons harmed by its operations.

209.     On April 10, 2026, Plaintiff contacted Absolute by telephone to request the identity of its liability and on-hook cargo carrier following the damage caused by Absolute's negligent recovery operation. Absolute's agents expressly refused to provide this information and terminated the call when Plaintiff invoked Absolute's legal disclosure obligation.

210.     This willful refusal to disclose legally mandated insurance information constitutes a breach of Absolute's statutory obligations, a breach of the implied covenant of good faith and fair dealing in the bailment relationship, and an unfair and deceptive act or practice within the meaning of S.C. Code Ann. § 39-5-20. This conduct has a clear potential for repetition, as

Absolute regularly conducts recovery operations for members of the South Carolina public in circumstances where insurance access is material to the victim's recovery.

211.     This non-disclosure was performed in concert with the other Defendants and in furtherance of the Enterprise's objective of minimizing claim exposure through the concealment of available insurance assets.

212.     As a direct result of Absolute's obstructive conduct, Plaintiff was forced to initiate formal litigation and incur additional costs including regulatory records searches and filing fees. Plaintiff seeks actual, treble, and punitive damages as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Prescott, Jr. respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

## I. ACTUAL AND SPECIAL DAMAGES

213.     Actual damages in an amount to be determined at trial;

214.     Special and consequential damages including:

215.     $8,510.00 representing the base ACV of the Vehicle;

216.     $4,000.76 representing the value of custom enhancements and modifications;

217.     $22,005.00 representing 163 hours of specialized professional labor at $135.00 per hour;

218.     loss-of-use damages at $250.00 per day from February 28, 2026 through the date of final judgment;

219.     expert witness and appraisal fees of $2,500.00; and

220.     stigma damages including permanent diminution in market value;

## II. STATUTORY DAMAGES

C. For violations of SCUTPA, S.C. Code Ann. § 39-5-20, treble damages upon a finding of willful or knowing violations, and reasonable attorney's fees and costs pursuant to S.C. Code Ann. § 39-5-140;

## III. ADDITIONAL RELIEF

E. Punitive damages for Defendants' willful, wanton, and reckless conduct, in an amount to be determined by the jury;

F. Prejudgment interest at the statutory rate from the date of loss;

G. Costs of this action; and

H. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Charles Prescott, Jr., Plaintiff

Pro Se

Columbia, South Carolina

## VERIFICATION

I, Charles Prescott, Jr., being duly sworn, depose and state that I am the Plaintiff in the above-captioned action; that I have read the foregoing Verified Complaint; and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Charles Prescott, Jr.

Sworn to and subscribed before me this 16th day of April , 2026.

Notary Public for South Carolina

My Commission Expires: August 11, 2033



**Richland County Common Pleas**

**Clerk : Jeanette W. McBride**
**Richland County Judicial Center**
**Columbia, SC 29201**
**(803) 576-1999**

**DUPLICATE**

| | |
|---|---|
| Received From: | Prescott, Charles  Jr |

Date: 4/16/2026
Receipt #:   382834
Clerk:  c40rmoorma

Paying for:        Prescott, Charles

Transaction Type:  Payment
Payment Type:    Check       $150.00

Reference #: 99311156
Comment:

Total Paid:             $150.00

**Non-Refundable**

| Case # | Caption | Previous Balance | Amount Paid | Balance Due | S/T |
|---|---|---|---|---|---|
| 2026CP4002514 | Charles  Prescott Jr vs  Geico General Insurnce Company | $150.00 | $150.00 | $0.00 | 140 |

| | | | | |
|---|---|---|---|---|
| **Total Cases:**   1 | | $150.00 | $150.00 | $0.00 |

ReceiptMULTICase.rpt V6.1

# STATE OF SOUTH CAROLINA
# IN THE COURT OF COMMON PLEAS
# COUNTY OF RICHLAND

Charles Prescott,
*Plaintiff*, v. Absolute
Towing, et al.,
*Defendants.*

**Case No.:** 2026-CP-40-02514

# PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS
## DIRECTED TO DEFENDANT ABSOLUTE TOWING

(Pursuant to Rule 34, SCRCP)

Plaintiff Charles Prescott, appearing *pro se*, pursuant to Rule 34 of the South Carolina Rules of Civil Procedure, requests that Defendant Absolute Towing produce the following documents for inspection and copying within thirty (30) days of service of these Requests. Documents shall be produced as they are kept in the usual course of business or organized and labeled to correspond to the categories in this Request.

## DEFINITIONS

**1. "Subject Vehicle"** means the vehicle belonging to Plaintiff that was towed and transported by Absolute Towing in connection with the events giving rise to this litigation.

**2. "Subject Tow"** means the towing and transport operation performed by Absolute Towing on the Subject Vehicle.

**3. "You" / "Your"** means Defendant Absolute Towing, its owners, officers, employees, agents, and any person acting on its behalf.

**4. "Document"** means all writings, recordings, electronically stored information, photographs, videos, and data of any kind, whether in paper or electronic form.

## REQUESTS FOR PRODUCTION

**Request No. 1:**    All dispatch records, dispatch logs, and dispatch communications relating to the Subject Tow, including but not limited to records showing when the tow was requested, who requested it, and when a tow truck was dispatched.

**Request No. 2:** All tow tickets, work orders, job orders, and service records relating to the Subject Tow.

**Request No. 3:** All invoices, billing records, receipts, and payment records relating to the Subject Tow, including records of who was billed and what amounts were charged.

**Request No. 4:** All vehicle condition reports, inspection forms, or checklists completed at the time of pickup of the Subject Vehicle, whether in paper or electronic form.

**Request No. 5:** All vehicle condition reports, inspection forms, or checklists completed at the time of drop-off or delivery of the Subject Vehicle, whether in paper or electronic form.

**Request No. 6:** All photographs, videos, or images of the Subject Vehicle taken at any time during the Subject Tow, including at pickup, during transport, and at drop-off.

**Request No. 7:** All GPS data, route logs, trip logs, or electronic tracking data from the tow truck used for the Subject Tow, showing the route traveled and times of departure and arrival.

**Request No. 8:** All dashcam footage, onboard camera recordings, or other video or audio recordings from the tow truck used for the Subject Tow.

**Request No. 9:** All communications — including emails, text messages, phone records, radio transmissions, and written correspondence — between Absolute Towing and any co-defendant in this action regarding the Subject Vehicle or the Subject Tow.

**Request No. 10:** All communications — including emails, text messages, phone records, and written correspondence — between Absolute Towing and any third party (including law enforcement, insurance companies, repair facilities, or other towing companies) regarding the Subject Vehicle or the Subject Tow.

**Request No. 11:** All internal reports, incident reports, accident reports, or memoranda relating to the Subject Vehicle or the Subject Tow, including any reports of damage, delay, or irregularity.

**Request No. 12:** All contracts, agreements, or memoranda of understanding between Absolute Towing and any co-defendant in this action that were in effect at the time of the Subject Tow.

**Request No. 13:** All contracts, agreements, or memoranda of understanding between Absolute Towing and any third party relating to the towing, transport, or handling of the Subject Vehicle.

**Request No. 14:** All records identifying the operator or driver who performed the Subject Tow, including employment records, assignment records, and dispatch assignments for the date of the Subject Tow.

**Request No. 15:** All records identifying any other Absolute Towing personnel who assisted with or were present during any portion of the Subject Tow.

**Request No. 16:** All training records, certifications, and licensing records for the operator or driver who performed the Subject Tow.

**Request No. 17:** All maintenance and inspection records for the tow truck used in the Subject Tow for the twelve (12) months preceding the date of the Subject Tow.

**Request No. 18:** All policies, procedures, standard operating procedures, training manuals, or guidelines in effect at the time of the Subject Tow governing the towing and transport of customer vehicles, including procedures for documenting vehicle condition and handling.

**Request No. 19:** All records of complaints, claims, or lawsuits involving damage to vehicles in Absolute Towing's custody during towing or transport operations filed or received within the twenty-four (24) months preceding and following the date of the Subject Tow.

**Request No. 20:** All insurance policies, certificates of insurance, or evidence of insurance coverage applicable to Absolute Towing's operations and/or liability for damage to vehicles in its custody at the time of the Subject Tow.

Respectfully submitted,

**Charles Prescott, *Pro Se***

150 Southwell Rd.

Columbia, SC 29210

Telephone: (843) 504-4542

Email: charles@columbiataxlawyer.com

Dated: April 20, 2026

---

## CERTIFICATE OF SERVICE

I hereby certify that on April ____, 2026, a copy of the foregoing *Plaintiff's First Requests for Production of Documents Directed to Defendant Absolute Towing* was served upon Defendant Absolute Towing by U.S. Mail and/or hand delivery at the following address:

Absolute Towing

1000 Buff St, Unit A

West Columbia, SC 29169

**Charles Prescott, *Pro Se***



Cut on dotted line.

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

9405 5301 0935 5322 1791 77

| Print Date: 2026-04-21 | PRIORITY MAIL® | *$8.85 |
| Ship Date: 2026-04-21 | Extra Services: | $0.00 |
| | Fees: | $0.00 |
| | Total: | $8.85 |

From:  CHARLES A. PRESCOTT, JR., EA
CHARLES A PRESCOTT
150 SOUTHWELL RD
COLUMBIA SC 29210-4462

To:
ABSOLUTE TOWING INC.
KENT L CLAY
1000A BUFF ST
WEST COLUMBIA SC 29169-7371

* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking® service on PRIORITY MAIL® service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®**   *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

# STATE OF SOUTH CAROLINA
## IN THE COURT OF COMMON PLEAS
### COUNTY OF RICHLAND

Charles Prescott,
*Plaintiff,* v. Absolute
Towing, et al.,
*Defendants.*

Case No.: 2026-CP-40-02514

## PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
## DIRECTED TO DEFENDANT ABSOLUTE TOWING

(Pursuant to Rule 36, SCRCP)

Plaintiff Charles Prescott, appearing *pro se,* pursuant to Rule 36 of the South Carolina Rules of Civil Procedure, requests that Defendant Absolute Towing admit the truth of the following statements within thirty (30) days of service of these Requests. Each matter is deemed admitted unless a written answer or objection is served within the time prescribed by Rule 36(a), SCRCP.

## DEFINITIONS

**1. "Subject Vehicle"** means the vehicle belonging to Plaintiff that was towed and transported by Absolute Towing in connection with the events giving rise to this litigation.

**2. "Subject Tow"** means the towing and transport operation performed by Absolute Towing on the subject vehicle.

**3. "You" / "Your"** means Defendant Absolute Towing, its owners, officers, employees, agents, and any person acting on its behalf.

## REQUESTS FOR ADMISSION

**Request No. 1:** Admit that Absolute Towing is a business entity engaged in the business of towing and transporting motor vehicles in the State of South Carolina.

**Request No. 2:** Admit that Absolute Towing received a request, dispatch, or instruction to tow and transport the subject vehicle on or about the date of the subject tow.

**Request No. 3:** Admit that Absolute Towing dispatched a tow truck and operator to pick up the subject vehicle.

**Request No. 4:** Admit that an employee, agent, or operator of Absolute Towing physically took possession of the subject vehicle at the pickup location.

**Request No. 5:** Admit that Absolute Towing transported the subject vehicle from the pickup location to a drop-off location.

**Request No. 6:** Admit that Absolute Towing's possession of the subject vehicle was limited to the period of transport from pickup to drop-off, and did not include storage of the vehicle.

**Request No. 7:** Admit that Absolute Towing used a specific method of towing (e.g., flatbed, wheel-lift, or dolly) to transport the subject vehicle.

**Request No. 8:** Admit that Absolute Towing's operator documented or was required to document the condition of the subject vehicle at the time of pickup.

**Request No. 9:** Admit that Absolute Towing's operator documented or was required to document the condition of the subject vehicle at the time of drop-off.

**Request No. 10:** Admit that Absolute Towing generated or maintained a dispatch record, tow ticket, or work order for the subject tow.

**Request No. 11:** Admit that Absolute Towing generated or received an invoice or billing record in connection with the subject tow.

**Request No. 12:** Admit that Absolute Towing's tow truck was equipped with GPS tracking or route-logging capability at the time of the subject tow.

**Request No. 13:** Admit that Absolute Towing's tow truck was equipped with a dashcam or other recording device at the time of the subject tow.

**Request No. 14:** Admit that Absolute Towing communicated with one or more other parties (including but not limited to co-defendants, law enforcement, insurance companies, or repair facilities) regarding the subject vehicle or the subject tow.

**Request No. 15:** Admit that Absolute Towing delivered the subject vehicle to a specific location at the conclusion of the subject tow.

**Request No. 16:** Admit that an individual or entity received or accepted delivery of the subject vehicle at the drop-off location.

**Request No. 17:** Admit that Absolute Towing maintained records identifying the operator or driver who performed the subject tow.

**Request No. 18:** Admit that Absolute Towing maintained records identifying any other personnel who assisted with the subject tow.

**Request No. 19:** Admit that Absolute Towing did not observe, report, or document any pre-existing damage to the subject vehicle at the time of pickup — or, if damage was observed, that it was documented.

**Request No. 20:** Admit that Absolute Towing did not observe, report, or document any new damage to the subject vehicle that occurred during the subject tow — or, if damage was observed or occurred, that it was documented.

**Request No. 21:** Admit that Absolute Towing had a contractual or business relationship with one or more co-defendants in this action at the time of the subject tow.

**Request No. 22:** Admit that Absolute Towing maintained insurance coverage applicable to damage to vehicles in its custody during towing and transport operations at the time of the subject tow.

**Request No. 23:** Admit that Absolute Towing has policies, procedures, or standard operating practices governing the towing and transport of customer vehicles.

**Request No. 24:** Admit that Absolute Towing's operator was properly licensed and qualified to operate the tow truck used for the subject tow at the time it was performed.

**Request No. 25:** Admit that all facts stated in the responses to these Requests for Admission are based on personal knowledge, business records, or information reasonably available to Absolute Towing.

Respectfully submitted,

**Charles Prescott,** *Pro Se*

150 Southwell Rd.

Columbia, SC 29210

Telephone: (843) 504-4542

Email: charles@columbiataxlawyer.com

Dated: April 20, 2026

---

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2026, a copy of the foregoing *Plaintiff's First Requests for Admission Directed to Defendant Absolute Towing* was served upon Defendant Absolute Towing by U.S. Mail and/or hand delivery at the following address:

Absolute Towing

1000 Buff St, Unit A

West Columbia, SC 29169

**Charles Prescott,** *Pro Se*

**STATE OF SOUTH CAROLINA**

**IN THE COURT OF COMMON PLEAS**

**COUNTY OF RICHLAND**

Charles Prescott,                                    **Case No.:** 2026-CP-40-
*Plaintiff,* v. Absolute                             02514
Towing, et al.,
*Defendants.*

**PLAINTIFF'S FIRST INTERROGATORIES**

**DIRECTED TO DEFENDANT ABSOLUTE TOWING**

(Pursuant to Rule 33, SCRCP)

Plaintiff Charles Prescott, appearing *pro se*, pursuant to Rule 33 of the South Carolina Rules of Civil Procedure, propounds the following Interrogatories to Defendant Absolute Towing. These Interrogatories are to be answered separately and fully, in writing, under oath, within thirty (30) days of service. Answers must be based on all information available to Absolute Towing, including information in the possession of its owners, officers, employees, agents, attorneys, and any other person acting on its behalf.

**DEFINITIONS**

**1. "Subject Vehicle"** means the vehicle belonging to Plaintiff that was towed and transported by Absolute Towing in connection with the events giving rise to this litigation.

**2. "Subject Tow"** means the towing and transport operation performed by Absolute Towing on the Subject Vehicle.

**3. "You" / "Your"** means Defendant Absolute Towing, its owners, officers, employees, agents, and any person acting on its behalf.

**4. "Identify"** when used with respect to a person means state the person's full name, title or position, employer, business address, and telephone

number. When used with respect to a document, "Identify" means state the document's title or description, date, author, and custodian.

## INTERROGATORIES

**Interrogatory No. 1:**   State the full legal name, form of business organization (e.g., sole proprietorship, LLC, corporation), and principal place of business of Absolute Towing.

**Interrogatory No. 2:**  Identify by full name, title, and job responsibilities each person employed by or working on behalf of Absolute Towing who was involved in any aspect of the Subject Tow, including but not limited to dispatching, driving, loading, transporting, and delivering the Subject Vehicle.

**Interrogatory No. 3:**   Describe in chronological detail the complete sequence of events relating to the Subject Tow, from the initial receipt of the tow request or dispatch through the final delivery and release of the Subject Vehicle at the drop-off location, including the date and time of each event.

**Interrogatory No. 4:**  State the date and approximate time that Absolute Towing received the request or dispatch to tow the Subject Vehicle, and identify the person or entity that made the request.

**Interrogatory No. 5:**  State the date, time, and location where Absolute Towing picked up the Subject Vehicle.

**Interrogatory No. 6:**  State the date, time, and location where Absolute Towing delivered or dropped off the Subject Vehicle.

**Interrogatory No. 7:**   Identify by name the operator or driver who performed the Subject Tow, and state that person's qualifications, certifications, and length of employment with Absolute Towing as of the date of the Subject Tow.

**Interrogatory No. 8:**  Describe the method of towing used to transport the Subject Vehicle (e.g., flatbed, wheel-lift, dolly), and identify the make, model, year, and license plate number of the tow truck used.

**Interrogatory No. 9:** Describe in detail the condition of the Subject Vehicle as observed by Absolute Towing's personnel at the time of pickup, including any pre-existing damage, and identify any documents (including photographs) that record that condition.

**Interrogatory No. 10:** Describe in detail the condition of the Subject Vehicle as observed by Absolute Towing's personnel at the time of drop-off or delivery, including any damage, and identify any documents (including photographs) that record that condition.

**Interrogatory No. 11:** State whether any incident, accident, contact, scraping, dragging, or other event occurred during the Subject Tow that may have caused or contributed to damage to the Subject Vehicle, and if so, describe the incident in detail.

**Interrogatory No. 12:** Identify all communications between Absolute Towing and any co-defendant in this action (including GEICO, Mikael Richards, and any other defendant or John Doe) regarding the Subject Vehicle or the Subject Tow, including the date, method (phone, email, text, in-person), participants, and substance of each communication.

**Interrogatory No. 13:** Identify all communications between Absolute Towing and any third party (including law enforcement, insurance companies, repair facilities, or other towing companies) regarding the Subject Vehicle or the Subject Tow, including the date, method, participants, and substance of each communication.

**Interrogatory No. 14:** State whether Absolute Towing had a contract, agreement, or ongoing business relationship with any co-defendant in this action at the time of the Subject Tow, and if so, describe the nature and terms of that relationship and identify any written agreements.

**Interrogatory No. 15:** State the total amount charged or invoiced by Absolute Towing for the Subject Tow, identify who was billed, and state whether payment has been received.

**Interrogatory No. 16:** Describe all policies, procedures, and standard operating practices that Absolute Towing had in effect at the time of the Subject Tow governing: (a) the documentation of vehicle condition at pickup and drop-off; (b) the handling and securing of vehicles during transport; and (c) the reporting of damage or incidents during towing operations.

**Interrogatory No. 17:** State every fact upon which Absolute Towing relies to support each affirmative defense asserted in its Answer to the Complaint, and identify every document and every person with knowledge supporting each such defense.

Respectfully submitted,

_____

**Charles Prescott,** *Pro Se*

150 Southwell Rd.

Columbia, SC 29210

Telephone: (843) 504-4542

Email: charles@columbiataxlawyer.com

Dated: April 20, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on April___, 2026, a copy of the foregoing *Plaintiff's First Interrogatories Directed to Defendant Absolute Towing* was served upon Defendant Absolute Towing by U.S. Mail and/or hand delivery at the following address:

Absolute Towing

1000 Buff St, Unit A

West Columbia, SC 29169      Signature _____

_____

# STATE OF SOUTH CAROLINA

## ISSUED BY THE DISTRICT COURT IN THE COUNTY OF RICHLAND

Charles Prescott, Plaintiff

v.

GEICO *et al*, Defendant

### SUBPOENA IN A CIVIL CASE

Case Number: 2026-CP-40-02514

Pending in RICHLAND County

TO:  Boyle Motor Company, Inc.
Attn:  William B. Boyle, Jr., Registered Agent
2540 Broad Street, Sumter, SC 29150
(803) 469-3414

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects in your possession, custody or control at the place, date and time specified below documents or objects:

The Estimate: A complete, unredacted copy of the itemized repair estimate generated for the 2008 Mercedes-Benz SLK 280 (VIN: WDBWK54FX8F182975).

Pricing Agreements: All written agreements or contracts between Boyle Motor Company and GEICO regarding "Preferred Shop" or "Direct Repair Program" (DRP) status, specifically including agreed-upon hourly labor rates for body, mechanical, and paint work.

Parts Protocols: All GEICO service rules or guidelines provided to Boyle Motor Company regarding the use of "Like Kind and Quality" (LKQ), Aftermarket, or Reconditioned parts versus Original Equipment Manufacturer (OEM) parts.

The "Field" Comparison: Any communications, notes, or digital logs involving GEICO adjusters where Boyle Motor Company's internal estimate was modified, adjusted, or suppressed to align with a GEICO "field" estimate.

Software Metadata: Documentation identifying the estimating software used (e.g., CCC ONE, Mitchell, or Audatex) and the specific "profile" or "rate table" mandated by GEICO for your shop's use.

| PLACE<br>150 Southwell Rd.<br>Columbia, SC 29210 | DATE AND TIME May 12 2026,10 AM |
|---|---|

ANY SUBPOENAED ORGANIZATION NOT A PARTY TO THIS IS HEREBY DIRECTED TO RULE 30(b)(6), SOUTH CAROLINA RULES OF CIVIL PROCEDURE, TO FILE A DESIGNATION WITH THE COURT SPECIFYING ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS, OR OTHER PERSONS WHO CONSENT TO TESTIFY ON ITS BEHALF, SHALL SET FORTH, FOR EACH PERSON DESIGNATED, THE MATTERS ON WHICH HE WILL TESTIFY OR PRODUCE DOCUMENTS OR THINGS. THE PERSON SO DESIGNATED TESTIFY AS TO MATTERS KNOWN OR REASONABLY AVAILABLE TO THE ORGANIZATION

I CERTIFY THAT THE SUBPOENA IS ISSUED IN COMPLIANCE WITH RULE 45(c)(1), AND THAT NOTICE AS REQUIRED BY RULE 45(b)(1) HAS BEEN GIVEN TO ALL PARTIES.

| Clerk of Court/Issuing Officer's Signature | Date | Print Name |
|---|---|---|

Pro Se Litigant's Name, Address and Telephone Number
Charles Prescott
150 South Well Rd., Columbia, SC 29210

# PROOF OF SERVICE

| SERVED | DATE 4/21/2026 | FEES AND MILEAGE TO BE TENDERED TO WITNESS UPON DAILY ARRIVAL |
|---|---|---|
| | PLACE 2540 Broad Street, Sumter, SC 29150 | ☐YES   ☐ NO    AMOUNT $ 0 |

| SERVED ON William B. Boyle, Jr., Registered Agent | MANNER OF SERVICE PRIORITY MAIL |
|---|---|
| SERVED BY Charles Prescott | TITLE Plaintiff |

## DECLARATION OF SERVER

I certify that the foregoing information contained in the Proof of Service is true and correct.

Executed on 4/21/2026

SIGNATURE OF SERVER

150    Southwell    Rd.    ,    Columbia    SC    29210
ADDRESS OF SERVER

Rule 45, South Carolina Rules of Civil Procedures, Parts (c) and (d):

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**(2)(A)** A person commanded to produce and permit inspection and copying of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial. A party or an attorney responsible for the issuance and service of a subpoena for production of books, papers and documents without a deposition shall provide to another party copies of documents so produced upon written request. The party requesting copies shall pay the reasonable costs of reproduction.

**(B)** Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time in the court that issued the subpoena for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

**(3)(A)** On timely motion, the court by which a subpoena was issued, or regarding a subpoena commanding appearance at a deposition, or production or inspection directed to a non-party, the court in the county where the non-party resides, is employed or regularly transacts business in person, shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance; or

(ii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to travel more than 50 miles from the county where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; or

(iii) requires disclosure of privileged or otherwise protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B)** If a subpoena:

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

SCCA 254 (05/2015)                    (See Rule 45, South Carolina Rules of Civil Procedure, Parts (c) & (d) on pages 2 and 3)

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to incur substantial expense to travel from the county where that person resides, is employed or regularly transacts business in person, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) Duties in Responding to Subpoena.**

(1)(A)A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(6)(B). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, the receiving party must take reasonable steps to retrieve the information. The person who produced the information must preserve the information until the claim is resolved.



 Cut on dotted line.

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

| 9405 5301 0935 5322 1829 17 | | |
|---|---|---|
| Print Date: 2026-04-21 | PRIORITY MAIL® | $8.85 |
| Ship Date: 2026-04-21 | Extra Services: | $0.00 |
| | Fees: | $0.00 |
| | Total: | $8.85 |

From: CHARLES A. PRESCOTT, JR., EA
CHARLES A PRESCOTT
150 SOUTHWELL RD
COLUMBIA SC 29210-4462

To: BOYLE MOTOR COMPANY
WILLIAM B BOYLE
2540 BROAD ST
SUMTER SC 29150-1850

* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking® service on PRIORITY MAIL® service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*



Cut on dotted line.

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

| 9405 5301 0935 5322 1829 17 | | |
|---|---|---|
| Print Date: 2026-04-21 | PRIORITY MAIL® | $8.85 |
| Ship Date: 2026-04-21 | Extra Services: | $0.00 |
| | Fees: | $0.00 |
| | Total: | $8.85 |

From:   CHARLES A. PRESCOTT, JR., EA
        CHARLES A PRESCOTT
        150 SOUTHWELL RD
        COLUMBIA SC 29210-4462

To:     BOYLE MOTOR COMPANY
        WILLIAM B BOYLE
        2540 BROAD ST
        SUMTER SC 29150-1850

* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking® service on PRIORITY MAIL® service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** Thank you for shipping with the United States Postal Service!
Check the status of your shipment on the USPS Tracking® page at usps.com